**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD W. ZINK, JR., Derivatively and on Behalf of Nominal Defendant, CHINA ENERGY SAVINGS TECHNOLOGY, INC., | ) ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| | ) |
| v. | ) ) |
| | ) |
| SUN LI, PAUL RISBERG, LAWRENCE YUEN-MINK LOK, LAI FUN SIM, PANG JING-WEN, WING SZE YAU, SHAO GUANG TAN | ) ) ) ) |
| | ) |
| Defendants, | ) ) |
| | ) |
| and | ) ) |
| | ) |
| CHINA ENERGY SAVINGS TECHNOLOGY, INC., | ) ) ) |
| | ) |
| Nominal Defendant | ) |

Civil Case No. 1:06-CV-3828-RJH

ECF Case

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

JURY TRIAL DEMANDED

1.      Plaintiff Richard W. Zink, Jr. ("Plaintiff"), derivatively and on behalf of Nominal Defendant China Energy Savings Technology, Inc ("CESV" or the "Company") by and through his undersigned attorneys, and for his Complaint against Individual Defendants herein, alleges the following based upon personal knowledge of the Plaintiff, and on information and belief as to all other matters, based upon*, inter alia,* the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the public documents, public announcements made by the Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding CESV, and information readily

1

obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

2.     This is a shareholder derivative action brought by Plaintiff and shareholders of CESV against certain current or former officers and directors of CESV seeking to remedy the Individual Defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and negligence that occurred from April 21, 2005 through the present, (the "Relevant Period") and that have caused substantial losses to the Company. [1]

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

4.     This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

5.     Venue is proper in this district because CESV is registered for trading on the Nasdaq stock exchange.

6.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of

---

[1] Because Defendant has failed to take action to remedy the breaches of fiduciary duties that occurred between April 21, 2005 and February 15, 2006, the Relevant Period continues through this day instead of ceasing on February 15, 2006, the day before the public became aware of the wrongdoings at the Company.

interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

7.     Plaintiff, Richard W. Zink, Jr., as set forth in the accompanying Verification, is, and was during the Relevant Period, a shareholder of CESV.  Plaintiff is a citizen of the State of Michigan.

8.     Nominal Defendant CESV is a Nevada corporation, with its principal place of business located at Suite 3203A, 32/F, Central Plaza, 18 Harbour Road, Wanchai, Hong Kong.

9.     CESV engages in the development, manufacture, sale, and distribution of energy-saving products for use in commercial and industrial settings in the People's Republic of China. The energy saving projects conducted by its subsidiaries mostly relate to public or street lighting systems, government administration units, shopping malls, supermarkets, restaurants, factories and oil fields, etc. There are small and large-scaled projects: the small-scaled projects relate to restaurants, shops, small arcades, offices and households through the sale of equipment, and the large- scaled projects relate to large shopping malls, supermarkets, factories and public bodies through the provision and installation of equipment over a term usually extended for years.

10.     Defendant Sun Li ("Li") is a citizen of Hong Kong.  He was Chairman and CEO of CESV until January 17, 2006.  Defendant Li is the largest shareholder of CESV.

11.     Defendant Paul Risberg ("Risberg") is a citizen of the State of Georgia. He was a member of the Board of Directors of CESV from 2004 until his resignation on March 28, 2006.

12.     Defendant Lawrence Yuen-Mink Lok ("Lok") is a citizen of Hong Kong.  He was a member of the Board of Directors of CESV from 2005 until his resignation on April 28, 2006.

13.     Defendant Lai Fun Sim ("Sim") is a citizen of Hong Kong.  She was a member of the Board of Directors of CESV from 2004 until her resignation on April 28, 2006.

14.     Defendant Pang Jing-Wen ("Pang") is a citizen of Hong Kong.  She was a member of the Board of Directors of CESV from 2005 until her resignation on April 24, 2006.

15.     Defendant Wing Sze Yau ("Yau") is a citizen of Hong Kong.  She was a member of the Board of Directors of CESV from 2004 until her resignation on April 26, 2006.

16.     Defendant Shao Guang Tan ("Tan") is a citizen of Hong Kong.  He was a member of the Board of Directors of CESV from 2004 until his resignation on April 26, 2006.

17.     Defendants Li, Risberg, Lok, Sim, Pang, Yau and tan are hereinafter collectively referred to as the "Individual Defendants."

18.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements and markets via access to internal

corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

19.    The Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements.

20.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the National Association of Securities Dealers Automated Quotations ("NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management and earnings, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would

be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions violated these specific requirements and obligations.

21.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with CESV, the Individual Defendants had access to the adverse undisclosed information about CESV's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about CESV and its business issued or adopted by the Company materially false and misleading.

22.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company. The Individual Defendants were provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, the Individual Defendants are responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

23.     Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit by disseminating materially false and misleading statements and/or concealing material adverse facts.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and is required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

25.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

26.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices

and controls of the Company. By virtue of such duties, the Individual Defendants were required to, among other things:

    a. exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    b. exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

    c. when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence.

## SUBSTANTIVE ALLEGATIONS

27.   CESV engages in the development, manufacture, sale, and distribution of energy-saving products for use in commercial and industrial settings in the People's Republic of China. The energy saving projects conducted by its subsidiaries mostly relate to public or street lighting systems, government administration units, shopping malls, supermarkets, restaurants, factories and oil fields, etc. There are small and large-scaled projects: the small-scaled projects relate to restaurants, shops, small arcades, offices and households through the sale of equipment, and the large- scaled projects relate to large shopping malls, supermarkets, factories and public bodies through the provision and installation of equipment over a term usually extended for years.

28.   Prior to August 2004, CESV did business as Rim Holdings ("Rim"). Rim was a holding company for all shares of Rimmer, a technical service provider for computer hardware and software manufacturers such as Microsoft, IBM, Compaq, Hewlett Packard and Cisco.

29.     On June 30, 2004, Rim acquired 50% of the outstanding shares of Starway Management Ltd. ("Starway") from a Virgin Islands holding company doing business as Eurofaith Holdings. The $120,000,000 purchase price of those shares was financed by Rim with a promissory note that was convertible into 223,073,380 shares of Rim. Pursuant to the terms of the note, Eurofaith had the option of conversion at any time prior to maturity.

30.     Starway was a Virgin Islands company which held all of the equity interests in Shenzhen Dicken Industrial Development Limited ("SDID"), a company which in turn owned all of the equity interests in Shenzhen Dicken Technology Development Limited ("SDTD"). Starway, through SDID and SDTD, was a marketer, distributor and manufacturer of energy saving products for use in commercial and industrial settings.

31.     Following Rim's purchase of Starway, the Company refocused its efforts on energy saving products. In conjunction with this move, on August 23, 2004, the Company's shareholders voted to change the Company's name from Rim to "China Energy Savings Technology, Inc.," to more accurately describe the Company's current operations.

32.     At the time of the Starway acquisition, the Company's stock was traded only on the OTC Bulletin Board.

33.     On August 16, 2004, the Company filed a Form NT 10-Q with the SEC indicating that it would not be able to timely file its quarterly report.

34.     On August 19, 2004, the Company dismissed Gary E. Hirth CPA and engaged Webb and Company P.A. as its new accountants. At the time, the Company

stated there was no disagreement with Gary Hirth on accounting issues, nor was their any other reportable occurrence relating to his departure. In the Company's transitional report filed on Form 10-KSB with the SEC on January 13, 2005, however, the Company revealed that Gary Hirth issued a going concern letter to the Company prior to his departure. Specifically, the Company stated,

> In Hirth's report dated December 29, 2003 and December 23, 2002 for financial statements for our fiscal years ended September 30, 2003 and September 30, 2002, respectively, Hirth indicated that: "The Company has negative working capital and a deficit stockholders' equity. These conditions raise substantial doubt about its ability to continue as a going concern. The financial statements do not include any adjustments that might result from the outcome of this uncertainty."

35.     On August 24, 2004, the Company filed its quarterly report with the SEC on Form 10-QSB. The Company reported quarterly revenue of $13.7 million, gross profit of $9 million, and earnings per share ("EPS") of $0.23 per share.

36.     On August 26, 2004, an investment company, New Solomon Consultants Limited, purchased a controlling interest in CESV by acquiring 56% of the Company's securities. These securities were acquired from Eurofaith upon conversion of the promissory note that was issued in exchange for a controlling interest in Starway.

37.     New Solomon is controlled by Able Stars Enterprises Ltd, which owns 55% of New Solomon, which is in turn owned by Defendant Li.

38.     On September 17, 2004, CESV's CEO, Lee Kam Man, resigned. He was replaced by Defendant Li who was also appointed Chairman of CESV's Board of Directors. At the time of his appointment, Li was the principal shareholder of SDID.

39.     On November 5, 2004, the Company's auditors, Webb & Company, resigned as CESV's auditors after one of its affiliates was appointed the new CFO of CESV.

40.   On November 17, 2004, CESV acquired an additional 15% interest in Starway, bringing its total interest in that entity up to 65%.

41.   On December 3, 2004, the Company announced that it filed a listing application with the NASDAQ to move its stock from the OTC Bulletin Board to the NASDAQ National Market. In that release, the Company also reported revenue for the nine months ending September 30, 2004 of $31 million and net profits of $22 million for the same period. The Company noted that its year over year net profits for that period had increased by 256%. Commenting on the Company's growth, the release went on to state:

> The management believes that this upward trend will continue for the next several years to come due to the serious shortage of electrical supply. In addition to the 65% stake in the energy saving project held by the company as of today, the company contemplates acquiring the remaining 35% stake in the near future.
>
> "We are growing rapidly as a company and believe a move to a more active exchange is in the best interest of the company and its shareholders," concluded Mr. Sun.

42.   On December 9, 2004, the Company issued a press release touting a substantial increase in the number of new contracts Starway had entered into in recent months. Specifically, the release stated:

> China Energy Savings Technology, Inc. a leading software developer and manufacturer of energy savings products in the PRC, announces today the number of contracts it signed in recent months has increased substantially.
>
> Shenzhen Dicken Industrial Development Limited, a subsidiary of China Energy Savings Technology, has signed over 100 new contracts since the closing of the acquisition of 50% of energy savings project in China on August 25, 2004. The subsequent acquisition of 15% stake of the project on November 16, 2004 further increased the Company's stake in the project to 65%. The total value of these contracts increased since August 25, 2004 are worth about $11 million, an increase of 108% compared with the same period last year. The management of China Energy Saving

Technology forecasts the net profit of the 4th quarter will at least double that of the same period last year, contributing to the profit growth.

Mr. Ian Cheng, Chief Executive Officer of Shenzhen Dicken Industrial Development Limited, said "these contracts representing 50% market share are expected to be completed in 2nd half of 2005 and the net profit is expected to double by then. The shortage of electricity supply in China is one of main reasons that our customers are buying more and more of our products. In many large Chinese cities and provinces, especially those booming regions in Southern China, rolling electricity blackouts have become common events during summer and winter seasons. Increasingly, Chinese government and businesses have begun embracing energy conversation and saving. Our products provide one of best and easiest solutions in the market place to save electricity. One thing is certain energy demands and energy production will continue to rise and we have positioned ourselves as a cost savings, environment saving energy player and we are looking at all aspects of the energy crunch in China." On December 2, 2004, the company was pleased to announce that it filed a listing application with the NASDAQ National Market to move from the OTC Bulletin Board to the NASDAQ National Market."

43.    On December 29, 2004, the Company filed a form NT10-K, stating it would not be able to timely file its annual report.

44.    On January 13, 2005, the Company filed a transition report for the period of January 1, 2004 though September 30, 2004 with the SEC on Form 10-KSB. For the nine month period ending September 30, 2004, the Company reported revenue of $31 million, gross profit of $19 million and EPS of $0.51 per share.

45.    On January 25, 2005, the Company issued a press release announcing its plans for 2005. That release stated:

China Energy Savings Technology, Inc., Chairman and CEO, Mr. Sun Li, on the basis of the corporate milestones, particularly the profit contribution in 2004, looks ahead to 2005.

China Energy Savings Technology ("CESV") is in current negotiations to acquire the remaining 35% interest in Starway Management Limited ("Starway"). Upon completion, the proposed acquisition is expected to greatly enhance the profit contribution to CESV. Starway will become a wholly owned subsidiary of CESV and its financials will consolidate to CESV.

Aside from the windmill project at Alashan, Xinjiang Province, China, the key members of the management, with their strong reputation in the Chinese energy sector, and through their extensive network of relationships, are at present identifying several potential acquisition targets in various energy sectors including coal mines, natural gas, and power plants, particularly those with large assets and good profit potentials. The company hopes to complete several acquisitions in 2005 through the issuance of new shares of CESV common stock without paying cash in the hope of preserving cash while making even higher profits for a greater return on investment for shareholders.

The projects in negotiation include a highly potential public utility gas company and a coal-refining factory. As a company making strong inroads into the Chinese energy sector, CESV is not only devoted to energy savings, but also to energy supply and enrichment. Company executives are quite sophisticated in all facets of energy, and have designs on turning the company into one of China's largest full-service energy conglomerates. CESV's ultimate goal is becoming a large-scale, comprehensive energy technology company listed on the NASDAQ National Market.

Since December 2004, CESV has signed a number of profit sharing contracts with the Chinese government involving the installation of equipment and the launching of various energy savings technology applications. In line with more than 100 sales contracts and orders signed last year, as well as the acquisition of several high profit energy projects, management foresees a substantial increase in both revenues and net profit for fiscal year 2005.

46.    On February 3, 2005, the Company issued a press release announcing

that CESV had acquired the remaining 35% interest in Starway to become the 100%

owner of that entity. Specifically, the Company stated,

The Board of Directors of China Energy Savings Technology, Inc. is pleased to announce it has acquired the remaining 35% stake in Starway Management Limited ("Starway") held by Sky Beyond Investments Limited ("Sky Beyond"). In exchange for the 35% stake, China Energy Savings will issue 7,807,569 shares of its common stocks to Sky Beyond. The amount of consideration given for the Acquisition was determined with reference to the acquisitions of 50% and 15% stake in Starway capital stock on June 30, 2004 and November 15, 2004 respectively.

Mr. Sun Li, CEO of China Energy Savings said, "The positive impact to the company's revenue and profit through from this acquisition cannot be taken lightly. This is a major event in our company's history, and dating back to August of last year, when we acquired 50% of Starway, we knew

13

we wanted to make them a wholly owned subsidiary as quickly as possible. We have worked very hard to accomplish this." On November 16, 2004 the company acquired an additional 15% of Starway, raising its stake to 65% at that time. "Complete ownership of Starway gives us every expectation we'll have better profits, and profit potentials moving forward. This is a great day in the company's history, and a great day for shareholders."

Upon completion of the shares transfer, China Energy Savings will wholly own Starway. At present, Starway holds 100% interest in Shenzhen Dicken Industrial Development Limited ("Shenzhen Dicken"). The core business of Shenzhen Dicken is the development of advanced energy savings products and wind energy project in China energy project in China.

For the period January to December 2004, Shenzhen Dicken had profits of approximately RMB254.7 million (approximately US$30.7 million) on revenues of RMB360.3 million (approximately US$43.6 million).

The Board of Directors of China Energy Savings, citing increased net profits and complete ownership in its China energy savings projects, has deemed it to be in the best interests of the corporation and its stockholders to proceed with the deal to acquire 100% of Starway. The Board also cited the acquisition as favorable to its listing application to transfer to the NASDAQ National Market.

47.     On February 14, 2005, the Company issued its quarterly report for the period ending December 31, 2004 with the SEC on Form 10-QSB. In it CESV reported quarterly revenue of $11.7 million, gross profit of $6.8 million and EPS of $0.25 per share.

48.     On April 18, 2005, CESV issued a press release announcing that their application to trade on NASDAQ had been approved. Specifically, the release stated:

China Energy Savings Technology, Inc., today announced that on April 13, 2005 NASDAQ approved its application to list its common stock on the NASDAQ National Market System (NMS).

The Company's common stock will be eligible for trading on the NMS on a date arranged by NMS, which is approximately 3 days from the Company's notice upon payment of the initial entry fee. The fee was remitted on April 18, 2005. The trading symbol for common stock will continue to be CESV.

The company would like to thank the following market makers for working with them throughout the application process: Goldman Sachs, RBC Capital, S.G. Martin Securities LLC, Capital Growth Financial, LLC, and Hudson Securities Inc.

49.     On April 20, 2005, the Company issued a press release announcing that

its shares would begin trading on the NASDAQ on April 21, 2005. Specifically, the

release stated,

China Energy Savings Technology, Inc., a leading energy savings company, today announced that its common stock will begin trading on the Nasdaq National Market System (NMS) on Thursday, April 21, 2005 when market opens. Shares of the Company's common stock will continue trading under the ticker symbol "CESV". The listing application was approved by Nasdaq on April 13, 2005.

Mr Sun Li, Chairman and CEO of China Energy Savings Technology commented, "The move to the NMS marks another significant milestone in the company's growth and development and represents another step in our ongoing commitment to delivering value to our shareholders. The NMS listing will provide greater visibility and access to a wider investor base. We are honored to join the family of NMS-listed companies and look forward to continued growth and development on the NMS."

"The shortage of energy supply will be getting worse in the years to come," Sun Li continued. "Because of this we are even more devoted to the contribution of energy conservation, which is in the best interest of our shareholders. When Starway Management Limited, the energy savings subsidiary of China Energy Savings Technology, generated $8.9 million in annual income in 2003 after consolidating its financials with its mother company, the earning per share was only $0.36. In 2004 the annual income reached $30.7 million after consolidating its financials with its mother company (before deducting the value of the shares issued under the company's 2004 equity plan), and the earning per share rose to $1.25. These figures reflected the potentials of energy saving market in China."

On March 23, 2005, the Research Works, Inc. an independent equity research company, initiated coverage of China Energy Savings Technology on the factors of our profit potential and NMS listing.

50.     On May 17, 2005, the Company filed a Form NT 10-Q with the SEC

indicating that it would not be able to timely file its quarterly report for the period ending

March 31, 2005. This announcement marked at least the third quarter in a row that the Company was unable to file its quarterly or annual report in a timely manner.

51.     On May 23, 2005, CESV filed its quarterly report for the period ending March 31, 2005 with the SEC on Form 10-QSB. In the report the Company reported quarterly revenue of $11.2 million, gross profit of $6.9 million and BPS of $0.18 per share.

52.     On June 27, 2005, the Company filed a Form 8-K with the SEC announcing a restatement of its financial reports for the fiscal year ending September 30, 2004 and the quarter ending December 31, 2004. Specifically the Company stated:

> On or about March 29, 2005, the Registrant concluded that it needed to amend and restate the financial statements presented in the Registrant's Quarterly Report on Form 10-QSB for the quarter ended December 31, 2004 in order to include information regarding stock issuances to consultants and other service providers that are more accurately reflected and accounted for in such quarter's Quarterly Report. Such stock issuances are reflected as additional expenses as more fully set forth in Amendment No. 1 to Form 10-QSB for the quarter ended December 31, 2004 filed with the Commission on March 29, 2005.
>
> On or about June 10, 2005, the Registrant concluded that it needed to amend and restate the financial statements presented in the Registrant's Amendment No. I to the Annual Report on Form 10-KSB for the fiscal year ended September 30, 2004 in order to: (i) correct earnings per share calculations related to the acquisition of shares of Starway Management Limited ("Starway"); (ii) add disclosure in Note 1 of the Registrant's financial statements regarding the consideration for the acquisition of Starway; (iii) add disclosure in Note 1 regarding revenue recognition accounting policies; (iv) add disclosure in Note 11 regarding Chinese taxes the Registrant is subject to; and (v) add disclosure in new Note 17 regarding the restatement of the financial statements.
>
> On or about June 10, 2005, the Registrant concluded that it needed to amend and restate the financial statements presented in the Registrant's Amendment No. 1 to the Quarterly Report on Form 10-QSB for the quarter ended December 31, 2004 in order to: (i) correct earnings per share calculations related to the acquisition of Starway; (ii) add disclosure in Note 1 of the Registrant's financial statements regarding the consideration for the acquisition of Starway;(iii) add disclosure in Note 2 regarding

revenue recognition accounting policies; (iv) add disclosure in Note 12 regarding Chinese taxes the Registrant is subject to; (v) add disclosure in new Note 18 regarding the restatement of the financial statements.

As a result of the above described restatements, the previously issued financial statements contained in the Registrant's Amendment No. I to Form 10-KSB for the fiscal year ended September 30, 2004 and the Registrant's Amendment No. 1 to Form 10-QSB for the quarter ended March 29, 2005 should no longer be relied upon. We have filed, on June 15, 2005, amendments to Amendment No. 1 to Form 10-KSB for the fiscal year ended September 30, 2004 and to Amendment No. 1 to Form 10-QSB for the quarter ended March 29, 2005 to effect the restatement of our financial statements for these matters.

The Registrant has provided to, and discussed with, both its current and prior independent registered accountants, these accounting matters.

53.    Also on June 27, 2005, CESV filed an amended Form 10-KSB for the fiscal year ended September 31, 2005 and an amended Form 10-QSB for the quarter ended December 31, 2005.

54.    On July 1, 2005, the Company announced the resignation of three of its Directors, Dennis Yu Won-Kong, Li Shilong, and Lee Kam Man, as well as the Company's CFO, Poon Kam-Wah. No explanations were given for the departures. To fill the vacant CFO position, the Company appointed Defendant Lawrence Lok Yuen-Ming.

55.    On July 12, 2005, CESV issued a press release announcing the Company's preliminary financial results for the quarter ended June 30, 2005. In the release, the Company announced quarterly revenue of $12.2 million, net income of $7.4 million and record EPS of $0.30 per share. With regard to these results, Defendant Li stated, "With the heat of summer upon us, and the demand for electricity growing, we continue to strongly promote energy conservation not only in China, but worldwide." He added, "Our quarterly revenue and profit figures show that we're not only growing as a company, but as a country our efforts to conserve energy are starting to show. As a

country we have a long road ahead. As a company we'll continue to be there every step of the way, promoting conservation of the resources we currently have to carry us into a prosperous future."

56.     In the July 12, 2005 press release, the Company also provided full year guidance, projecting annual profits of $27 million and annual EPS of $1.10 per share. On this news, the Company's stock jumped $0.52, or nearly 6%, to close at $9.72 on extremely high volume. The following day the Company's stock continued to rise, gaining another $0.41 per share for a two day increase of $0.93 per share, or 10%.

57.     On August 15, 2005, CESV filed a Form NT 10-Q with the SEC indicating that it would not be able to timely file its quarterly report for the period ending June 30, 2005. That announcement marked the fourth consecutive quarter that the Company failed to timely file a quarterly or annual report.

58.     On August 22, 2005, CESV filed its quarterly report for the period ending June 30, 2005 with the SEC on Form 10-QSB. In the report, the Company reported quarterly revenue of $9.6 million, net income of $4.5 million and EPS of $0.18 per share. These results were substantially below the Company's preliminary financial results announced on July 12, 2005. On this news, the Company's stock lost $0.81 per share, or nearly 10% of its value.

59.     On December 14, 2005, CESV filed yet another Form NT 10-K, indicating that it would not be able to timely file its annual report. This was the fifth consecutive quarter for which the Company failed to file a timely report.

60.     On December 20, 2005, the Company filed its annual report with the SEC on Form 10-KSB. In it, the Company reported annual revenue of $48.4 million, net

income of $22.4 million, and EPS of $1.04 per share. These results were below the Company's prior guidance offered on July 12, 2005.

**The Truth Begins to Emerge**

61.     On January 17, 2006, CESV announced an underwriting agreement with a "full service investment financial group" to raise $50 million through a private placement of Company stock. The Company announced the proceeds would be used for the purpose of financing future acquisitions of new infrastructure and energy ventures. The same day, the Company announced the departure of its Chairman, CEO and largest shareholder, Defendant Li.

62.     A Dutton Associates report noted with suspicion the facts surrounding the Company's impending private placement. In that regard, Dutton & Associates stated,

> Upon Mr. Li's resignation The Board of Directors immediately appointed Kwun Luen Siu to the positions of Chairman of the Board and Chief Executive Officer. Mr. Siu was referred by Sun Li and reviewed by the Board of Directors of China Energy before being appointed to the positions. Mr. Siu served as the Responsible Director of Forex, Futures and Securities under Securities and Futures Commission of Hong Kong, Chairman of Supervisory Committee of the Chinese Gold and Silver Exchange Society of Hong Kong, and Managing Director of Dashin Group in Hong Kong. The second announcement dealt with a proposed offering of $50.0 million of preferred stock. Interestingly, before Sun Li's resignation, Mr. Siu introduced a financial investment group to China Energy. Today, China Energy announced that it signed an underwriting agreement with this full service financial investment group to raise $50.0 million through a private placement of preferred stock.

63.     On February 15, 2006, the NASDAQ announced that it had halted trading of CESV stock. The press release stated only that "additional information" was requested from the Company and that trading would be suspended until the Company provided the requested information.

64.    It was not until March 22, 2006, that the Company offered any further information as to why its shares had been suspended or what information the NASDAQ had requested. In a short press release, the Company stated,

> At Nasdaq's request, China Energy Savings Technology is providing this update as to the status of Nasdaq's inquiry. Nasdaq's request for information involves the facts and circumstances regarding the underlying transactions related to the rescission of certain Rule 144 legal opinions by the Company's prior securities counsel who resigned in February 2006, as well as certain other matters related to the company's issuance of securities. The Company has retained new securities counsel and is cooperating with Nasdaq in an effort to resolve any questions or issues raised by Nasdaq in order to resume trading as soon as possible.

65.    Dutton Associates issued a research report on March 13, 2006, which opined that the NASDAQ's halt of trading was related to issues surrounding large sales of restricted stock by CESV's former CEO and Chairman, Defendant Li, and his company, New Solomon. Specifically, the report stated:

> Seeking additional information from China Energy Savings Technology, Inc., (China Energy) NASDAQ halted trading in China Energy on February 15, 2006. The price of China Energy stock when halted was $6.82 per share. Nasdaq said that the stock would remain halted until China Energy has fully satisfied its request for additional information. It is our understanding that part of the reason for the halt was due to the withdrawal of the attorney's opinion letter on the recent Rule 144 Sales of Restricted Stock. Since the beginning of 2006, there were several sales of note by New Solomon Consultants, LTD:
>
> 1.    January 3, 2006 - Sale of 2,200,000 shares in a Private sale at $8.00
>
> 2.    January 27, 2006 - Sale of 1,000,000 shares in a Private sale at $5.75
>
> 3.    February 3, 2006 Sale of 1,300,000 shares in market at $8.92
>
> Mr. Sun Li, former Chairman of the Board and CEO of China Energy, owns 55% of New Solomon Consultants, Ltd., and is the controlling stockholder of New Solomon. Hence Mr. Sun Li is listed as a seller on the above sales.

The halt in trading came one day after China Energy filed its SEC Form 10Q for the period ending December 31, 2005, wherein it was noted, "The independent auditors of the Company and China Energy were advised by the SEC on January 31, 2006 and February 9, 2006 respectively that the SEC is conducting an informal and non-public inquiry in the Matter of China Energy Savings Technology, Inc." and the SEC requested that China Energy and its auditors furnish certain documents. China Energy has stated it, "intends to fully cooperate with these inquiries and to supply all available materials requested." We assume that the current trading halt by the NASDAQ relates to these requests by the SEC, the issues surrounding the insider sales, and the withdrawal of the legal opinion by the attorney.

It is interesting that one of the requirements for the sale under "Rule 144 Sales of Restricted Stock" is the 1% requirement that states, "...after the one-year holding period, the number of shares that may be sold during any three-month period can't exceed the greater of 1% of the outstanding shares of the same class being sold, or if the class is listed on a stock exchange or quoted on Nasdaq, the greater of 1% or the average reported weekly trading volume during the four weeks preceding the filing a notice of the sale on Form 144." China Energy's outstanding shares as of the last SEC 10Q filing are 25,421,853. Applying the 1% requirement to the four-week volume for the sales would allow: approximately 575,000 shares to be sold on January 3, 2006, approximately 448,000 shares to be sold on January 27, 2006, and approximately 1,213,600 shares to be sold on February 3, 2006. We believe the Rule 144 sales by New Solomon exceeded the 1% requirement, -and could be a focus of the SEC investigation and the NASDAQ trading halt.

66.    Based on the Company's announcement and the Dutton Associates report, restricted stock transactions by Defendant Li, and/or his holding company New Solomon, have raised issues within NASDAQ that have led to the Company's stock being halted until information on those suspect transactions have been provided and any issues related have been resolved.

67.    The Company has never disclosed, as a "risk factor" in its quarterly or annual reports or elsewhere, that inside and/or self dealing transactions in the company's stock by insiders, its executives, and/or members of its Board of Directors, could lead to trading of its stock being halted by the NASDAQ.

68.    As of the filing of this complaint, CESV's stock is still halted and there is no indication when, if at all, CESV stock will resume trading.

69.    As a result of CESV's stock being halted, Plaintiff and members of the Class have been damaged by not being able to dispose of their holdings in CESV for over 2 months and, as such, their CESV stock is worthless.

70.    Additionally, the recent revelations of misconduct and self-dealing, arising during a time when trading of the Company's stock has been halted, have fostered widespread distrust of the Company and has eroded its goodwill.

71.    Moreover, on March 10, 2006, Defendant Li filed a Form 144 with the SEC indicating his intent to dispose of 2,970,000 shares held by his company, New Solomon, when trading of CESV's securities resumes. The sale of nearly 12% of the Company's outstanding stock will compound the downward movement of the Company's stock price attributable to the negative information about the company.

72.    On May 18, 2006, the Company announced the resignations of all of the current members of its Board of Directors – Paul Risberg, Jing Wen Pang, Wing-Sze Yau, Shao Guang Tan, Kwun Luen Siu, Lai Fun Sim, and Lawrence Lok.  Paul Risberg had disagreed with the Company about its approach in communicating with its shareholders during the trading halt.

73.    Furthermore, on May 18, 2006, the Company announced that it had received a staff determination letter on may 10, 2006 from the Nasdaq Stock market stating that, due to public interest concerns under Marketplace Rule 4300, and because the Company may have violated marketplace Rules 4330 and 4420, that the Company's stock would be delisted as of May 19, 2006.

## DEMAND WOULD BE FUTILE

74.     Plaintiff brings this action derivatively in the right and for the benefit of CESV to redress injuries suffered and to be suffered by CESV as a result of the breaches of fiduciary duty by the Individual Defendants.  This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

75.     Plaintiff will adequately and fairly represent the interests of CESV and its shareholders in enforcing and prosecuting its rights.

76.     Plaintiff is an owner of CESV common stock and was an owner of CESV common stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

77.     Derivative Plaintiff has not made a demand on the board of directors to bring these causes of action because such a demand would be futile. At the time these derivative actions were commenced, all of the members of the Board of Directors had resigned, leaving no Board upon which to make a demand.

78.     Plaintiff has not made any demand on the shareholders of CESV to institute this action since demand would be a futile and useless act for the following reasons:

      a. CESV is a publicly held company with millions of shares outstanding, and thousands of shareholders;

      b. Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

      c. Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

79.    CESV has expended and will continue to expend significant sums of money as a result of the illegal and improper actions described above.   Such expenditures will include, but are not limited to:

a.   Costs incurred to carry out internal investigations, including legal fees paid to outside counsel and experts.

**FIRST CAUSE OF ACTION**

**Against Individual Defendants**
**for Breach of Fiduciary Duty**

80.    Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

81.    The Individual Defendants owed and owe CESV fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe CESV the highest obligation of good faith, fair dealing, loyalty and due care.

82.    The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

83.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial condition and business prospects of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

84.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, CESV has sustained significant damages.  As a

result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

85.    Plaintiff, on behalf of CESV, has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Against The Individual Defendants
### for Abuse of Control

86.    Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

87.    The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence CESV, for which they are legally responsible.

88.    As a direct and proximate result of the Individual Defendants' abuse of control, CESV has sustained significant damages.

89.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

90.    Plaintiff, on behalf of CESV, has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Against The Individual Defendants
### for Gross Mismanagement

91.    Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

92.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and

fiduciary duties with regard to prudently managing the assets and business of CESV in a manner consistent with the operations of a publicly held corporation.

93.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, CESV has sustained significant damages in excess of millions of dollars.

94.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

95.     Plaintiff, on behalf of CESV, has no adequate remedy at law.

### FOURTH CAUSE OF ACTION

### Against The Individual Defendants
### for Waste of Corporate Assets

96.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

97.     As a result of the Individual Defendants' improper conduct and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Individual Defendants have caused CESV to waste valuable corporate assets by paying bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend the Individual Defendants' unlawful actions.

98.     As a result of the waste of corporate assets, Individual Defendants are liable to the Company.

99.     Plaintiff, on behalf of CESV, has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Against The Individual Defendants
### for Unjust Enrichment

100.    Plaintiff incorporates by reference and reallege each and every allegation set forth above as if set forth fully herein.

101.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of CESV.

102.    Plaintiff, as shareholder and representative of CESV, seeks restitution from the Individual Defendants, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by the Individual Defendants, from their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to ensure that Plaintiff has an effective remedy;

C.      Awarding to CESV restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by him;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 22, 2006                          Respectfully submitted,


                                             s/William B. Federman
                                             William B. Federman, # WF 9124
                                             FEDERMAN & SHERWOOD
                                             120 N. Robinson, Suite 2720
                                             Oklahoma City, OK 73102
                                             (405) 235-1560/FAX: (405)239-2112
                                             *wfederman@aol.com*

I:\Pending\ChinaEnergy\Pleadings\Complaint.doc

**VERIFICATION**

I, RICHARD W ZINK JR, declare that I have reviewed the Complaint ( Complaint") prepared on behalf of China Energy Savings Technology, Inc , and I authorize its filing I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge. I believe those allegations to be true. As to those allegations of which I do not have personal knowledge. I rely on my counsel and their investigation and for that reason believe them to be true I further declare that I am a current holder and have been a holder, of China Energy Savings Technology, Inc common stock during the time period in which the wrongful conduct alleged and complained of in the Complaint was occurring

5/5/2006

Date     (Signature of Investor)